UNITED STATES v. HANLEY et al. SAME v. MORRIS. SAME v. THOMSON. SAME v. JENKINS.

(District Court, N. D. Illinois. January 20, 1896.)

1. CARRIERS—INTERSTATE COMMERCE ACT—INDICTMENT—REBATE.

Under section 2 of the interstate commerce act, which makes it unlawful for carriers to receive greater or less compensation from one shipper than from another for whom the carrier renders like service, an indictment which states that a carrier gave a rebate to one shipper without stating any instance in which the carrier refused a like rebate to any other shipper is defective, as not showing discrimination.

2. SAME.

Under that clause of said act which forbids carriers collecting greater or less compensation than is specified in their published schedules, an indictment which charges that defendants were officers of a railroad company which was a common carrier between designated points in different states; that a certain rate was in force between such points; that defendants, during a certain period of time, received such rate from a certain shipper; and that, at a certain time, they unlawfully and willfully paid such shipper a certain rebate,—is good, even though it does not state the day or days when the shipments were made, nor allege that the defendants, when the shipments were made, intended to charge less than the schedule rate.

3. SAME.

Under the clause of said act making it unlawful for a carrier, by means of false billing, classification, weighing, or by any other device or means, knowingly to assist or suffer any person to obtain transportation at less than the regular rate, an indictment will not lie for paying or receiving rebates.

At Law.

Indictments for violations of the interstate commerce act. Defendants move to quash the indictments.

John C. Black, U. S. Dist. Atty., for the United States.

W. S. Forrest, T. E. Milchrist, Duncan & Gilbert, and Winston & Meagher, for defendants.

GROSSCUP, District Judge. These cases have been argued together on motions to quash the indictments. As they involve, in many features, the same questions, I will consider them together. The first and third counts of the indictment against Hanley and Reinhart were manifestly intended to charge the defendants with unjust discrimination under section 2 of the interstate commerce act. The second and fourth counts of the indictment were framed to bring the offenses within paragraph 2 of section 10 of the same act. The indictment against Morris was intended to bring his case within paragraph 4 of section 10. The indictments against Thomson and Jenkins were each intended to bring their alleged offenses within paragraph 3 of section 10.

I will not at this point recite in detail the averments of the indictments, except to say that the only substantive act of supposed criminality charged was the giving and receiving of a rebate, in all the cases except that of Morris, and in his the giving and acceptance of a special rate, whereby each of the shippers obtained a rate for the transportation of live stock from Kansas City to Chicago

different from and less than the schedule rate then in force. The government counsel drawing the indictment appear to have considered that rebates or special rates were of themselves criminal, and could by appropriate averment be made the substance of every offense defined in the interstate commerce act.

The interstate commerce act, under which these indictments were found, has been held by the United States supreme court (Interstate Commerce Commission v. Baltimore & O. R. Co., 12 Sup. Ct. 844) to be in many of its features simply declarative of pre-existing law, both in this country and in England; its office to that extent being to make such pre-existing law applicable to a commerce which, otherwise, would be free. Among the chief purposes was the prevention of extortionate rates by the common carriers of the country, and the prohibition of unjust discrimination in the extension of their facilities to the commercial public. To accomplish the latter purpose, section 2 of the act provided that it should be unlawful, by any special rate, rebate, drawback, or other device, to collect or receive from any person a greater or less compensation for any service subject to the provisions of the act, than the carrier collects or receives from any other person for whom he does a like and contemporaneous service, in the transportation of a like kind of traffic, under substantially similar circumstances and conditions. The usual medium employed to discriminate between shippers was a special rate, rebate, or drawback, and this section was directed against unjust discrimination by the employment of any such artifices. The language of the statute recognizes that a uniform rate between different shippers is not always possible or proper; that the time of service, the kind of traffic, and the circumstances and conditions under which it is transported may materially change the just obligations and duties of the carrier to his patrons. Equality and uniformity of rate, disassociated from considerations of the time, kind, and circumstances of the transaction, is, therefore, not the object aimed at. The object of the statute is to prevent one shipper from getting the advantage over his competitor in the matter of rates only where they both make substantially a like offering to the carrier. There can, therefore, be no conviction under this section until it is alleged and proven that an advantage in rates has been given by the carrier to one person over that obtained by another, where both persons, fairly considered, are upon an equality in the time, kind, and circumstance of their offering.

The indictment ought to state all the facts that make the gist of the offense, and the gist of the offense is not completely disclosed unless it shows a case where two or more persons, making to the carrier an offering of traffic alike in point of time, kind, circumstance, and condition, have been treated differently in the rate exacted. A rebate or variation from the usual rate in force is not, alone, sufficient. It must be supplemented by another member of the comparison, namely, the existence of another shipper or shippers who, entitled to like treatment, have been denied it. A re-

bate, drawback, or special rate is not, of itself, unjust discrimination; for it does not necessarily follow that a like rebate, drawback, or special rate has not been extended to all the patrons of the carrier.

The first and third counts of the indictment against Hanley and Reinhart aver, in substance, that the defendants were officers of a railroad company carrying on interstate traffic; that from April to November of the year 1892 the authorized rate for live stock between Kansas City and Chicago, as scheduled, published, and approved by the interstate commerce commission, was 23½ cents per hundred; that the shippers named in the indictment transported, during this period, more than 100 car loads of live stock between these cities, and were charged and paid the schedule rate; and that on the 15th of October of the same year they received from the carrier, by way of rebate upon these shipments, a sum of money equal to $5 per car load, whereby, the indictment recites, there was collected and received from such shippers a less compensation for the transportation of the property than was collected and received by the same carrier from divers other persons, whose names are unknown to the grand jury, for doing a like and contemporaneous service in the transportation of a like kind of traffic, under substantially similar circumstances and conditions. It was not contended, on argument, that the indictment set forth any specific instance of discrimination between persons entitled to uniform rates from the carrier. It was, indeed, admitted that, while the grand jury knew of the rebate set forth in the indictment, they did not know of any instance in which a like rebate was not given, or was refused, to another shipper. No basis of comparison, such as the law contemplates, is laid in the indictment, and the defendants are given no notice, by any of its averments, with what conduct of the carrier the transactions set forth are to be compared. A conception of discrimination necessarily involves at least two instances of shipment, one of which, in the matter of rates, has fared better than the other, though both, by reason of their similitude in those features named by the act, should have fared alike. The indictment in this case states the one instance, but is silent as to any other. The court, upon the face of the indictment, is not advised of what the other instance was, or what were the conditions and features that entitled it to an equality in the matter of rates with the one stated. This is a fatal omission of one of the elements that are essential to a case of unjust discrimination, and the two counts of the indictment under consideration cannot be regarded, therefore, as describing an offense under section 2 of the act.

But the interstate commerce act was not intended solely to prevent unjust discriminations. It was meant, as well, to prevent extortionate rates, and, looking thereto, provision was made that the carrier should schedule his rates with the interstate commerce commission, and upon their approval should publish the same, whereby such schedule should be a fixed and uniform rule of charge during the period of its existence. To make this effective, and so effective

that the shipper might not only safely rely upon it as the maximum of his own expenditure for transportation, but also as the minimum of the expenses of his rival for the same service, it was made unlawful for a carrier to collect or receive from any person a greater or less compensation for the transportation of property than is specified in such published schedule. Another provision of the act makes any officer of a corporation carrier willfully doing the things prohibited equally guilty. I am of the opinion that the first and third counts of the indictment against Reinhart and Hanley state a good case under these provisions. These counts of the indictment, as already recited, aver that the railroad company in question was a common carrier between Kansas City and Chicago; that the rate in force between these points for live stock during the period from April to November, 1892, was 23½ cents per hundred; that the defendants were officers of the carrier, and as such officers demanded, collected, and received from the shipper, on account of shipments of live stock made during that period, namely, more than 100 car loads of such live stock, the schedule rate then in force; and that, in October following, they unlawfully and willfully gave and paid, and caused to be given and paid, and willingly suffered to be given and paid, to the shipper a rebate of $5 upon each car load so transported. The facts thus set forth exhibit a transaction, or series of transactions, which resulted in the shipper procuring the transportation of his live stock between two states at a rate less than the schedule rate then in force,—a result brought about by the willful acts or sufferance of the officers of the corporation carrier. The most serious objection to the indictment thus considered is its apparent multifariousness; that is, its compression into one charge of a series of transactions. Each shipment, as affected by the subsequent rebate, might constitute an unlawful departure from the schedule rate. But I am of the opinion that, where a series of acts, otherwise lawful, are made unlawful by a single subsequent transaction, the government may elect to treat the whole series as one transaction. Any other rule would put it in the power of the carrier, by the payment of a single gross rebate, to make it impossible to point out any single shipment to which the rebate was applicable, and thereby make a prosecution impossible. At any rate, the indictment is not, for this objection, open to a demurrer or motion to quash.

The objection that the indictment does not state the day or days upon which the shipments were made is, in my judgment, equally unsound. The transaction, as it turned out, was a continuing one until closed by the payment of the rebate, and was at no time unlawful until the rebate was paid. The payment of the rebate, as a single transaction, individualized the whole transaction to which it related as of that day. Each and all of the shipments upon which the rebate was paid may be regarded as a transaction closed upon the date the rebate was paid, and it is sufficient to state a transaction as of the day it was closed. Neither is it necessary to charge that, when the shipments were made, it was intended to demand and receive a less rate than the schedule rate, and that the subsequent

rebate was only the actual carrying out of such intention. The parties may not have intended to violate the law when the shipment was made, but are none the less guilty if, by any subsequent conduct, fairly connected therewith, they compassed the result which the law prohibited. The offense is, at most, malum prohibitum, and the point of inquiry is, not so much whether there was a preceding and accompanying intent, as what was the practical outcome of the defendants' acts? I therefore regard the first and third counts as sufficient under this provision.

The second and fourth counts of the indictment are under a provision of the act having a purpose entirely different from that of section 2 just under consideration. This provision of the act is to cover features of misconduct such as may be regarded as subordinate and incidental to the enforcement of its main provisions. The rates for the transportation of traffic are necessarily varied by considerations of bulk, weight, value, perishableness, etc., and thus is necessitated the classification of traffic for the purposes of the schedule. The carrier might, by false billing, false classification, false weighing, or other device, easily evade the letter of the main offenses, while, nevertheless, directly bringing about an unjust discrimination between shippers. The attention of the act was therefore directed to these covert side methods, whereby it was made unlawful for the carrier, by means of false billing, false classification, false weighing, or false report of weight, or by any other device or means, to knowingly and willfully assist, or suffer, or permit any person to obtain transportation at less than the regular rates. The second and fourth counts of the indictment against Hanley and Reinhart proceed upon this provision, but do not charge, as the substantive act, any false billing, false classification, false weighing, or false report of weight, or any device or means related to such conduct. The only substantive act charged is the rebate paid to the shippers in October, 1892, as above set forth. I am clearly of the opinion that this provision of the act was not intended to cover such means of evasion as rebates, drawbacks, or special rates. These methods of unjust discrimination, or of variation from the established rates, are fully covered in the main provisions of the act. If their denouncement had been intended to be repeated in the provision under consideration, apt language to that effect would, undoubtedly, have been inserted. With rebates, drawbacks, and special rates in mind, as the chief artifices commonly used to compass unjust discrimination, the legislature would scarcely have drawn a proviso, intended to meet such artifices, but wholly omitting them by name, while specifically detailing the others in mind. The rule is too well settled to be open now to debate that where a criminal statute specifically points out certain acts forbidden, supplementing them with a catch-all conclusion, the offenses intended to be included in the catch-all provision are such only as grow out of, or are akin to, the acts specified. The second and fourth counts of the indictment state no acts specifically forbidden in the provision under consideration, or such as grow out of or are akin thereto, and must, therefore, be quashed.

This brings us to the indictments against the shippers, which are practically disposed of upon the reasoning that has already been applied to the interstate commerce act. The interstate commerce act in none of its provisions makes the favored shipper a criminal, except as he may, by the payment of money, solicitation, or otherwise, induce the carrier, or any of its officers or agents, to discriminate unjustly in his favor as against any other consignor or consignee in the transportation of property. The penalties of the statute for unjust discrimination, as also the penalties for variation from the schedule rates, otherwise run against the carrier and his agents and officers alone. But, howsoever law-abiding the carrier may intend to be, there are conditions that may make his intentions ineffectual. He can only operate his road by the hands of officers and agents. Through them alone does he come in personal contact with the shipper. Traffic itself, as I have already pointed out, is of such divergent character as requires classification in the fixing of schedule rates. It is not difficult, therefore, to see how, by false billing, false classification, false weighing, false representation of the contents of the package, false reports of its weight, or by other like devices, the shipper may impose upon the best-intentioned agent, or, if the agent be dishonest, may act collusively with him, and thereby impose upon the carrier and other shippers. It is therefore made unlawful for a shipper to knowingly and willfully, by false billing, false classification, false weighing, false representation of the contents of a package, or false report of its weight, or by any other device or means, with or without the consent of the carrier, its agent or agents, to obtain transportation for such property at less than the regular rates. This provision is also manifestly subsidiary and incidental to the main purposes of the act. It meets a danger lurking in one of the side passages of the subject. Now, the indictments against Thomson and Jenkins are nominally under these provisions, but the substantive acts set forth are not false billing, false weighing, false classification, false representation of the contents of the package, or false report of its weight, nor any device akin thereto. The substantive act charged against these defendants is the receipt of the rebate of October, 1892. The indictment thus attempts, by indirection, to bring the shippers within one of the offenses that is not intended to run against the shippers at all. In my judgment, it would be an unjustifiable enlargement of the intendment of the provision, and the counts against these shippers must, therefore, be quashed.

The indictment against Morris is under the provision of the statute which makes it unlawful for a shipper, by the payment of any money or other thing of value, solicitation, or otherwise, to induce any carrier to discriminate unjustly in his favor, as against any other consignor or consignee in the transportation of property. This indictment, like the first and third counts of the indictment against Hanley and Reinhart, fails to state any other specific instances of shipment, except those of the defendant himself. In this respect, and for the reasons I have already given, it fails to state

a case of unjust discrimination.    But the offenses denounced are only such acts as bring about unjust discrimination.    Discrimination, therefore, with all that it implies, must be alleged and proven as an element of the crime; else there can be no conviction.    The indictment must be quashed.

I concur with counsel for the government in the public importance of these prosecutions, or any prosecutions for the violations of this act.    The cost of transportation is an important element in the calculations of every merchant and manufacturer, and discrimination by the carrier is a direct and unjust interposition in the causes that bring about success or failure among competitors in these fields.    A free hand to the carrier to enlarge or diminish these elements of expense, at his whim, or from a friendship for individual merchants or manufacturers, would invest him with a power that the commercial world can never tolerate. This case illustrates, that whatever difficulties there are in the enforcement of this act are not so much due to the law itself, as to the failure of the prosecution to gather up and lay before the grand jury the essential facts of a case.    The facts difficult to obtain—the transaction between the carrier and the favored shipper—are fully spread upon this indictment.    The facts not difficult to obtain—the identity of the shipper discriminated against—constitute the fatal omission.    Ordinary alertness and intelligence would have .avoided this pitfall. If there were, in fact, unjust discrimination, the grand jury ought to have had no trouble in discovering the parties discriminated against.    Commercial interests discriminated against never purposely hide their complaints.

For the reasons given, the indictments against Thomson, Morris, and Jenkins must be quashed, as well as the second and fourth counts of the indictment against Hanley and Reinhart.    The first and third counts of the indictment against Hanley and Reinhart will stand, under the provision prohibiting variation from the schedule rates.