UNITED STATES v. CLEVELAND, C., C. & ST. L. RY. CO. et al.

(District Court, N. D. Illinois, E. D.   August 16, 1915.)

CARRIERS ⬥⟳38—CARRIAGE OF GOODS—REBATING—INDICTMENT—SUFFICIENCY.
    An indictment, charging three carriers with rebating, averred that two of them were engaged in carrying coal over their respective routes; that a third corporation, which was the owner of the majority of the stock of the other two and controlled and managed their affairs, did unlawfully and knowingly give to a shipper of coal a sum of money as a rebate of the freight rates and charges collected, which were the regular fixed rates.   Interstate Commerce Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380, as amended by Act June 29, 1906, c. 3591, § 2, 34 Stat. 587 (Comp. St.

⬥⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

1913, § 8569), declares that no carrier shall refund or remit, in any manner or by any device, any portion of rates, fares, or charges, except such as are specified in the tariffs, while section 10 (section 8574) provides that if the carrier be a corporation, penalties for violation may be visited upon any director, or officer thereof, or any receiver, trustee, licensee, agent, or person employed by such corporation. The Elkins Law (Act Feb. 19, 1903, c. 708, § 1, 32 Stat. 847 [Comp. St. 1913, § 8597]) provides that anything done or omitted to be done by a corporate common carrier subject to the act to regulate commerce, which, if done or omitted to be done by any director or officer, agent, or employé, would constitute a misdemeanor, shall be held a misdemeanor committed by the corporation, that it shall be unlawful for any person or corporation to offer, grant, accept, or receive any rebate, and that in construing the provisions of the section, the act, omission, or failure of any officer or other person acting for or employed by any common carrier or shipper acting within the scope of his employment shall be deemed the act of the common carrier. *Held*, that while the mere fact that the third corporation owned the majority of the stock of the other two carriers did not constitute it their agent or give it the management of their affairs, yet the indictment was sufficient to charge an offense, averring that the rebate was made by such third corporation as their agent, and clearly indicating that such procedure was a device to avoid the penalties of the acts, therefore the averments of ownership of stock cannot be taken as controlling the allegations of agency.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 96, 97; Dec. Dig. ☞38.]

At Law. The Cleveland, Cincinnati, Chicago & St. Louis Railway Company and others were charged with rebating. On demurrer to the indictment. Demurrer overruled.

The case is before the court on demurrer of the three defendants to an indictment charging rebating. The allegations of fact essential to a consideration of the questions presented, and which are common to the three counts of the indictment, are:

The defendant the Cleveland, Cincinnati, Chicago & St. Louis Railway Company—commonly known as the Big Four Company—is an Ohio corporation, and, for seven years prior to the presentation of the indictment (November, 1912), engaged in carrying coal from Harrisburg to Danville; the defendant Chicago, Indiana & Southern Railroad Company, an Illinois corporation, was engaged in carrying coal from Danville to Gibson, Ind. Both companies have been carrying such coal over their respective routes for delivery at Gibson, Ind., to the Indiana Harbor Belt Railroad, for carriage by the latter to connections with other carriers for further transportation. Some of it has been transported from Harrisburg under common arrangement between such two defendants and such other carriers for continuous shipment, some under joint tariffs. The Big Four Company, during the period specified, filed its separate established rate, also its concurrences in joint schedules.

Most of the coal carried from Harrisburg was delivered by the O'Gara Coal Company, a New York corporation; and "in respect to all such transportation of such property for said O'Gara Coal Company, in such interstate commerce over the routes of said (defendants, Big Four Company, and Chicago, Indiana & Southern Railroad Company) during such period of time, the full, lawful freight rates and charges earned by both of said last-mentioned railway companies have been paid to them by said O'Gara Coal Company."

The giving of a rebate by the two defendants above referred to, and the connection of the third defendant, Lake Shore & Michigan Southern Railway Company, therewith, is then charged: "And the grand jurors aforesaid, upon their oath aforesaid, do further present that said Cleveland, Cincinnati, Chicago & St. Louis Railway Company and said Chicago, Indiana and Southern Railroad Company, during said period of time, to wit, on the 24th day of November, in the year 1909, at Chicago aforesaid, in said Eastern Division of said Northern District of Illinois, through the Lake Shore & Michigan South-

ern Railway Company, a corporation theretofore organized and then existing under and by virtue of the laws of the state of Illinois (said the Lake Shore & Michigan Southern Railway Company then and there acting as the agent of said Cleveland, Cincinnati, Chicago & St. Louis Railway Company, and said Chicago, Indiana & Southern Railroad Company in that behalf, and this by reason of the fact that it was then the owner of the majority of the capital stock of both of said companies, and controlled and managed their affairs), unlawfully did knowingly give to said O'Gara Coal Company a sum of money, to wit, the sum of $10,000, as a rebate of the freight rates and charges so as aforesaid before that time paid by said O'Gara Coal Company to said Cleveland, Cincinnati, Chicago & St. Louis Railway Company, and said Chicago, Indiana & Southern Railroad Company in respect to the transportation in interstate commerce of said property of said O'Gara Coal Company as aforesaid; by which giving of said rebate the said property was by said several common carriers transported in interstate commerce at less rates than the rates so named therefor in said tariffs and schedules as said Cleveland, Cincinnati, Chicago & St. Louis Railway Company, said Chicago, Indiana & Southern Railroad Company and said the Lake Shore & Michigan Southern Railway Company, when so as aforesaid giving the same, well knew."

The formal charge is thereupon incorporated into each count that the three defendant carriers did unlawfully and knowingly give a rebate in respect to the transportation of property in interstate commerce.

Each of the three counts is challenged as insufficient in its charge of the commission of an offense by any of the defendants, because:

"First. A legal conclusion is set out as the basis of the agency.

"Second. The count alleges that the agency existed solely by reason of the fact that the Lake Shore & Michigan Southern Railway Company was the owner of a majority of the capital stock of the defendants, and controlled and managed their affairs. It therefore fails to aver facts of agency within the limitations of the Elkins Act.

"Third. The facts set forth show affirmatively that the Lake Shore & Michigan Southern Railway Company was without authority to act as the agent of the two other companies.

"Fourth. The indictment fails to aver, in accordance with the language of the Elkins Act, that the agent acted for or was employed by the alleged principals while acting within the scope of his employment.

"Fifth. The count fails to set forth any specific rates, fares, and charges specified in the tariffs, which were received by either defendant in respect of which it is alleged to have given a rebate.

"Sixth. The count fails to specify the shipments for which either defendant received freight rates and charges as compensation for the carrying of the same and in respect of which such defendant is alleged to have given a rebate.

"Seventh. The count fails to set forth any freight rates or charges separately due each of the defendants which were received by it as consideration for services rendered, and further fails to specify the sum alleged to have been separately given by each defendant as a rebate of the freight rates and charges separately received or accounted for to it.

"Eighth. Each count fails to show any specific violations of the statute, in that it declares only that the defendants gave divers sums of money as rebates to a certain party who for seven years previous thereto had been engaged in shipping coal over the defendant railroads to points beyond."

Charles F. Clyne, U. S. Atty., of Chicago, Ill.

Glennon, Cary, Walker & Howe, of Chicago, Ill., for defendants.

GEIGER, District Judge (after stating the facts as above). The allegations of the indictment may be thus summarized: Two railroads are carrying interstate shipments of coal for a shipper who pays the full lawful freight tariffs. Such coal is forwarded by them to a belt line, which in turn receives it for transportation to connections with other carriers by whom it goes to points of ultimate destination. A

sum of money, charged to be a rebate, is paid to the shipper, in the following manner: The two carriers give it *through* a *third corporation carrier,* who, the indictment says, parenthetically, *was then and there acting as the agent* (of the two carriers) *in that behalf, and this by reason of the fact that it was then the owner of the majority of the capital stock of both of said companies and managed and controlled their affairs.* This alleged rebate operated to carry the property at less than the published rate, as the three carriers, when giving the same, well knew. The three companies are charged with *knowingly* paying a rebate to the shipper. Do these facts justify the inference that the offense defined in the following sections of the Interstate and Elkins Acts has been committed?

"Sec. 6. Nor shall any carrier refund or remit in any manner or by any device, any portion of rates, fares or, charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs." Comp. St. 1913, § 8569.

Under section 10 of the original act, although the prohibition under section 6 comprehended all carriers, the penalties for violation could be visited, if the carrier was a corporation, upon—

"any director or officer thereof, or any receiver, trustee, lessee, agent, or person acting for or employed by such corporation." Comp. St. 1913, § 8574.

But the Elkins Law declared:

"That anything done or omitted to be done by a corporation common carrier, subject to the act to regulate commerce and the acts amendatory thereof, which, if done or omitted to be done by any director or officer thereof, or any receiver, trustee, licensee, agent, or person acting for or employed by such corporation, would constitute a misdemeanor under said acts or under this act, shall also be held to be a misdemeanor committed by such corporation.   *   *   *"

And further:

"And it shall be unlawful for any person, persons, or corporation to offer, grant, or give or to solicit, accept, or receive any rebate, concession, or discrimination in respect to the transportation of any property in interstate or foreign commerce by any common carrier subject to said act to regulate commerce and the acts amendatory thereto whereby any such property shall by any device whatever be transported at a less rate than that named in the tariffs published and filed by such carrier, as is required by said act to regulate commerce and the acts amendatory thereto, or whereby any other advantage is given or discrimination is practiced."

Also:

"In construing and enforcing the provisions of this section the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier [or shipper] *acting within the scope of his employment* shall in every case be also deemed to be the act, omission, or failure of such common carrier or shipper as well as that of the person." Comp. St. 1913, § 8597.

Considering the first four grounds assigned on the demurrer, the argument in support thereof is, in substance, that the indictment fails to show any relation between the Lake Shore Company and the other two carriers, save that growing out of the ownership of a majority

of their capital shares; that it must be construed as showing that company possessed of only such control and management of their affairs as resides in a majority ownership of stock; hence it not only fails to show a relation of agency, but, in the absence of other disclosure of such relation, its legal existence is really negatived. It is therefore insisted that, even if the Lake Shore Company did make a payment which, if made by either of the other carriers, would be a rebate, the indictment shows it to have been made by one, or in a manner, not yet comprehended within the prohibitive terms of the statute. In other words, it was made by a stranger; the payment was not made by the corporation which bore the relation of *carrier* to the shipper, nor: (1) By an agent; or (2) person acting for, or (3) (a person) *employed by, such corporation;* and in no event could the *act* of the Lake Shore corporation, as a distinct legal entity, be deemed to be the act of either or both of the other two corporations, as: (1) Their agent; or (2) person acting for; or (3) employed by (them) any common carrier acting *within the scope of his employment.*

It may be assumed that the ownership of a majority of the capital shares in a corporation by an individual or by another corporation constitutes neither agency nor managerial control, as those terms are usually used in implying a contractual relation of principal and agent, master and servant, or the like. And, if this were all that could be spelled out of the indictment before us, it might be said that not sufficient has been alleged to show the existence of a relation between the Lake Shore Company and the other companies to justify the inference required by the statute; that is to say, if we start with the assertion that the statute refers to agency, a delegated authority to act for the principal, or that, as to a person *acting for* or *employed by* another, there be the contractual element, the conclusion that an owner of a majority of the shares of a corporation is neither, is as evident as it is necessary.

But, granting that an indictment which predicates an agency *solely* upon the ownership by the agent corporation, of the majority of the stock of the alleged principal corporations may be infirm, it is important to recognize the probable relations intended to be reached by the law as it now stands; and this may be done, conceding to the utmost the proposition that a rebate, to be such as is condemned by the law, must come from and be *paid* by or on *behalf* of the corporation which is in the relation of carrier to the shipper. It may be conceded that a payment by a *stranger*—if it be thought that a stranger ever does such things—is permissible. These elementary concessions do not aid us; they bring us back to the fundamental question, who, other than *strangers,* are comprehended; or, to put it in another way, when does a third person or corporation cease to be a stranger legally, and what is a sufficient allegation, in an indictment, of complicity in the commission of the alleged offense? And, in my judgment, the law, in its intention to reach not only the particular corporation which sustains the relation of carrier to the shipper, but also its agents and persons *acting for it,* comprehends either individuals or corporate entities who contribute, knowingly and understandingly, to a refund or remission "in any manner or by any device," and it is whol-

ly immaterial that, in other respects, the latter may bear no relation to the carrier which may be the foundation of a legal relation of agency or employment having ascertainable scope. To put it more particularly, when the payment is made to a shipper, when it is charged to have been intended to operate, and did operate, as a rebate, when two corporations are charged to have given it *through* a third, does not the indictment sufficiently charge a *device?* When it further charges, though only formally, *knowledge* by each of the participants of the character and intended operation of the payment, does it not sufficiently charge that the refund or rebate was made by one *acting for* the real carriers?

Grant that the ownership of the majority of capital stock did not constitute the Lake Shore Company the agent, nor in any sense a legal delegate which could bind the other two companies in ordinary transactions. The statute is not limited to that sort of relation. It comprehends a matter of conduct in respect of making rebates; it aims to reach those on whose behalf the rebate is paid and those who have complicity, with knowledge, therein. If the individual or corporation guilty of complicity in fact is to be relieved because he or it had no other duly constituted relation with the principal offender, then, as in the present case, the law can easily be frustrated. The latter goes acquit because *he* did not pay; the former because he or it was a volunteer. Plainly, the statute, considering its purpose to reach any *device*, intends to reach precisely those situations where the one making *the payment in fact* may be shown to have acted for that purpose alone, though possibly in all other respects a legal stranger. Therefore, granting that the ownership of the stock does not in and of itself show agency, as that term is ordinarily to be understood, it does show a *basic relation* of *interest* sufficient to justify the inference that the shipper was really the beneficiary of a *device.* Granted that the two carriers hauled coal for the O'Gara Company; that the latter paid the full freight; that the Lake Shore Company, the holder of the stock control in the carrier companies, paid to the shipper knowingly sums which are charged to be rebates (that is, refunds on freights), is it reasonable to interpret this *state of facts* as giving the Lake Shore Company the status of a stranger? Or is it reasonable—even as against the necessity of giving an innocent rather than a culpable color—to say that these facts alone justify the inference that *such company acted for* the other companies; that they all acted understandingly and knowingly to accomplish in a devious way that which the two carriers were forbidden to do directly? I am satisfied that good sense requires an affirmative answer to this latter question; that these facts of themselves justify the inference that the Lake Shore Company sustained the relations toward the other companies which are necessary to establish the commission of the offense. This does not mean that they establish the fact conclusively or irrebuttably, but they *justify* its inference. Therefore the parenthetical clause of the indictment may be rejected except in so far as it charges the fact of majority stock ownership. The allegation that this was the *reason* of the agency may be omitted, and we may still draw the inference from the combined state of facts charged that there was, perhaps not a contractual *agency* or *employment,* but their equivalent in the criminal law, an abetting or complicity or confedera-

tion. That, after all, ought to suffice, unless the statute be construed to indicate the most palpable of devices for its own evasion. That is to say, if a majority owner of the stock in a carrier can pay what he is charged to have known and intended to be a refund, and still not be subject to the inference that he and the carrier *agreed* that he should do so, if further allegation or proof must be adduced before he must answer, or must furnish countervailing proof, then the law has left free to be practiced the most palpable device to commit that which, in most sweeping terms, it aimed to stop.

It may be a theme for reflection whether, where a corporation, not itself the carrier, but the owner of a majority of stock in the carrying corporation, knowingly pays to a shipper of the latter what is in effect a rebate, it should not be conclusively held to have "acted for the other" corporation, whether the latter was a formal party to it or not. It may be that, when once it appears that the latter did not have actual knowledge, or that under the circumstances it could not be said to have knowledge presumptively, there is a want of that relation necessary to a finding of complicity. But the idea is certainly suggested that where the intercorporate stockholding situations exist, the law can easily be frustrated where the interrelationship itself furnishes the basis upon which the one corporation may "act for" the other; where the relationship is one of interest which may dispense with the necessity of formal delegation of authority or request to do the prohibited act. It is not necessary, however, to determine the case on so narrow a basis of fact.

It may be true, as suggested by counsel during oral argument, that when one speaks of another as having management or control of a railway, it ordinarily means such managerial control as an individual, a general or traffic manager, exercises. But it is not true that, when a statute denounces an act done by a carrier or any one "acting for it" the latter, of necessity, must have acted only upon the promptings of direct *delegated* authorization. As a penal statute, it must be construed reasonably to give it the greatest efficacy to accomplish its object. Therefore, when this indictment charges that the O'Gara Coal Company, as a shipper, received these refunds; that the two companies were the actual carriers; that the Lake Shore Company had a majority of their stock; that it paid the refunds which the O'Gara Company received; that the three companies *knowingly* paid them *as rebates*—there is a sufficient statement of *facts* upon which to found a charge, to be answered by each of the carriers, of a violation of the statute. In other words, when it charges that the three companies knowingly paid or suffered to be paid what is charged to have been a rebate, each and all are charged with complicity therein, even though the company which did the actual paying may, in all other respects, have been and be, a legal stranger to the other two. When once the latter is charged with having knowingly paid the rebate, that it was the medium *through* which the other companies paid it, justification for the payment on other grounds is, it seems to me, sufficiently negatived; and the parenthetical effort to give the ownership of a majority holding of stock as a basis of legal *agency* to bring the situation within the

terms of the statute need only to be considered as supportive of the necessary allegation that the three companies knowingly and understandingly co-operated, each for the other, in doing the prohibited act. If the statute were to be limited only to relations, agencies, or employment or of delegated authority between carriers and others, individual or corporate, which have a formal or express contractual basis, the allegations of the indictment here might be infirm; but if the language, *agent, or person acting for or employed by such corporation,* be considered in the light of settled principles respecting joint wrong-doers, under which each is the representative of *all* others, no difficulty is apprehended in treating the facts averred as a sufficient basis for inferring, even though it be circumstantial, the ultimate fact of violation.

Nor is this conclusion forbidden by the language of the Elkins Act which directs that in construing and enforcing its provisions, the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or shipper, *acting within the scope of his employment,* shall be deemed to be the act of such common carrier as well as that of the person. This may have the effect of defining the limitations of *imputed* responsibility. That is to say, the law does not contemplate that such responsibility arises always from the *mere fact* of *any* agency, no mattter what its scope may be. For example, if a locomotive engineer or conductor should pay to a shipper a refund in respect of a shipment, the law might not impute his act to the corporation, as it would if the payment were made by a traffic manager or freight solicitor. But, under the law, are not averment and proof permissible to show that he *in fact* acted for his carrier principal? Plainly so. And therefore the question, as upon the present indictment, is, What is a sufficient allegation of fact to justify the inference? To put it concretely, suppose an indictment charged that A. B. shipped coal over the C. D. Railway and paid the full freight; that the C. D. Railway Company paid him a rebate *through* E. F. (said E. F. then and there acting as the agent of the C. D. Railway Company, and this by reason of the fact he was one of its locomotive engineers). Granting that a locomotive engineer's act in paying a sum of money to a shipper is not to be imputed to his principal as the paying of a rebate, because he is not acting within the *scope of his employment* as an engineer, do the allegations that the *carrier paid through* him; that the payment was in fact a rebate; that the carrier and the engineer *knowingly* paid it as a rebate—still require that the allegation of *agency by reason* of the relationship as *engineer* be accepted as controlling and in conclusive negation of the construction of a device, and in negation of his "acting for" the carrier in respect of the particular transaction? This seems to me not open to serious doubt. It is clear that certain agents or employés of a carrier have duties within whose scope the payment of rebates, if lawful, would naturally fall. The section intends that the acts of such agents, when done, shall, as matter of law, be deemed to be the act of the carrier, and to dispense with further proof. But certainly it does not, and cannot, intend that instances where the relation was constituted for no other

purpose and with no wider scope than the commission of the particular act complained of should be beyond reach. In such cases, naturally, the indictment must contain either the appropriate general averment, or facts from which the inference may be drawn.

Therefore when, as in the present case, the indictment charges the payment of a refund which is a rebate on freights, and it appears that the payment was made to the shipper by a corporation which holds a majority of the stock of the two carriers, there is herein—when coupled with the further allegation that such payment was *knowingly* made by these carriers as a rebate—a sufficient allegation of rebating by a *device;* and such allegation involves and necessarily tenders, among others, the question of fact whether the corporation making the payment was *acting for* the two carriers. In other words, the relationship and mode of operation described in the indictment is a sufficient allegation of a *device* which, if proven, and until counter proof be forthcoming, is sufficient basis for the necessary inference that the paying corporation acted for the others, and the averment of agency *by reason of* stock control cannot negative or limit such inference.

Counsel for defendant has stated the theory of the indictment thus:

"That if one railroad company own a majority of the stock of another railroad company, the former can *thrust* responsibility upon the latter under the provisions of the Elkins Act by paying a sum of money as a rebate to a shipper of freight over the railroad of the latter company."

It is but repetition of what has been said to suggest that, if the indictment alleged: (1) The carriage of freight by two carriers for the O'Gara Company; (2) the payment of full freight rates; (3) the ownership of a majority of their stock by the Lake Shore Company; (4) the payment of sums of money by it to the O'Gara Company—it might well be urged to be infirm because of its failure to allege: (1) The relationship which must exist; and (2) the fact that the payment charged to have been made effected a rebate or deviation from the tariffs. But, when there are added the two circumstances that the payment was made *knowingly*—to the knowledge of the three companies—and that it did to their knowledge *effect a rebate,* the larger theory embodying the element of complicity, of *acting for* each other, of refunding freights, is disclosed. Without these, the required conclusion, under the statute, might be reached by conjecture only. With them, every ingredient of fact necessary to constitute the offense is expressly averred, excepting that respecting the relationship between the Lake Shore and the other two companies. In my judgment the fact of such relationship may justifiably be inferred to be that of "acting for" the carrying corporations. It is then no longer reasonable to adopt—to the exclusion of such view—the notion that such corporation was a stranger to the other two, and, being such, acted as a volunteer.

The other grounds assigned in support of the demurrer do not, in my judgment, require notice. The criticisms respecting insufficient detail of rates, fares, shipments, payment of rebates, and the like may be entitled to consideration upon a demand for a bill of particulars, but do not vitiate the indictment.

An order may be entered overruling the demurrer.