SPENCER, KELLOGG & SONS, INC., *v.* DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY.

Supreme Court, Erie County, July, 1922.

Carriers — railroads — interstate commerce — commissions paid by elevating company to forwarding agents for business of elevating grain — elevating company not agent of railroad carrier and carrier cannot be held liable for rebating.

Tariff schedules on file with the Interstate Commerce Commission for the defendant specify: " The rates named herein include a charge of not exceeding one cent per bushel made by the Buffalo * * * elevators against the grain for elevation and transfer from lake vessels to cars, and five days' storage; said charge to be retained wholly by such elevator companies as compensation for services performed." Plaintiff in soliciting orders for elevating paid commissions to forwarding agents. Defendant received the grain in its cars from the elevator for shipment and collected from the shippers one cent per bushel for plaintiff's elevating charges. Defendant refuses to pay plaintiff the money collected for elevating charges on the ground that defendant might be held liable to prosecution under the Interstate Commerce Law for rebating. *Held,* that in paying commissions to forwarding agents for the business of elevating grain plaintiff did not act as defendant's agent; that defendant is not liable for the acts of plaintiff and that payment of the money collected for elevating charges to plaintiff would not create any liability, civil or criminal, against the defendant.

MOTIONS for direction of a verdict, made by plaintiff and defendant.

*Lewis & Carroll,* for plaintiff.

*Locke, Babcock, Spratt & Hollister,* for defendant.

Brown, J.   In the tariff schedules filed in behalf of the defendant and fourteen other railroad companies with the interstate commerce commission specifying freight charges on ex-lake grain for export applying at and east of Buffalo, Erie, Penn., and Oswego, N. Y., to the seaboard, effective June 1, 1920, it is specified: " The rates named herein include a charge of not exceeding one cent per bushel made by the Buffalo  *  *  *  elevators against the grain for elevation and transfer from lake vessels to cars, and five days storage; said charge to be retained wholly by such elevator companies as compensation for services performed." It is also provided in such schedule that such rates will apply to the elevator of the plaintiff and seventeen other elevators. The plaintiff specifically agreed to such provisions of the schedules as apply to its elevator.

In September and October, 1921, the plaintiff elevated from lake vessels and delivered to the defendant in its cars for shipment to New York 153,559 bushels of grain, for which service the defendant collected from the shippers or owners of the grain the sum of $1,535.59 for the plaintiff, to recover which this action is brought.

It appeared upon the trial that the plaintiff solicited of the forwarding agents representing the owners or shippers the business of elevating, storing and delivering such grain, and that the plaintiff paid such forwarding agents the sum of $695.59 as commissions for furnishing such grain for plaintiff's elevator. It thus appeared that of the moneys earned by the plaintiff, viz., $1,535.59, $695.59 had already been expended as a favor or advantage to the shipper. The defendant asserts that such expenditure was in violation of the schedule of freight rates filed with the interstate commerce commission, of which the plaintiff was a party; that when the plaintiff agreed that it would retain the elevator charge of one cent a bushel as its compensation, it thereby agreed that it would not rebate any of its charge to the shipper; that a voluntary payment by the defendant of the one cent per bushel which it has collected under the freight schedules to the plaintiff, with knowledge that the plaintiff has already made an illegal discrimination in favor of and rebate to the shipper, would subject the defendant to civil and criminal prosecution for violation of federal statutes relative to interstate commerce.

The paying of the commissions by the plaintiff to the shipper or his agent for the privilege of elevating the grain and earning the one cent per bushel very likely is paying a rebate out of the tariff rate. Such act is condemned by federal statute. The crucial question is whether defendant in any wise would be respon-

sible in whole or in part therefor by paying the plaintiff's claim so as to be subjected to criminal prosecution. It must be conceded that defendant cannot be compelled by judgment to pay moneys, the payment of which would subject it to criminal prosecution.

The defendant is not only answerable for its own acts, but for the acts of its agents as well in the rigid enforcement and observance of all provisions of the filed tariff schedules. It is bound to see that no rebate is paid, no discrimination is practiced by any of its employees or agents.

In the transaction of elevating the 153,559 bushels of grain from the lake steamers and delivering it into defendant's cars the plaintiff did not in any wise act for or represent the defendant. The grain was not shipped to the defendant at Buffalo. It was shipped to the forwarding agents of the owners; it was delivered to the plaintiff by the masters of the boats at the request of the forwarding agents; the forwarding agents paid the freight charges for its transportation to Buffalo. The defendant had no interest in, control of or responsibility for the grain prior to its delivery to the defendant in its cars; prior to that delivery the plaintiff certainly was not the defendant's agent as to that grain, and the defendant was not responsible to any one for plaintiff's acts relative thereto. It is very difficult to see how it could be successfully argued that the plaintiff acted as agent or representative of the defendant when it paid the commissions to the forwarding agents. While it is true that the plaintiff promised that it would not pay such commissions out of its charges for elevation, etc., of one cent per bushel, and it may be that a violation of that promise is a federal offense, yet how does such offense create any liability, criminal or otherwise, against the defendant? If the defendant had no knowledge of such wrongful act it is very clear that no possible liability could be created by the payment of plaintiff's claim. Does the fact that defendant now knows that the plaintiff has paid such commissions legally authorize defendant to retain the $1,535.59 that it has collected for the plaintiff's service in handling the grain? What is to become of such money? Does the fact that defendant now knows of plaintiff's payment of such commissions give defendant title to such money? Whatever offense was committed was committed by the paying of the commissions sometime in 1921, with which act defendant was in no wise connected. By paying the moneys now in defendant's hands to the plaintiff it is inconceivable how defendant could be said to aid, abet or assist plaintiff in the commission of a violation of the federal statute in 1921. It is very clear that the defendant

up to the present time has incurred no liability, criminal or otherwise, by plaintiff's paying such commissions. The criminal act of rebating, if committed at all, was complete in 1921.

In the absence of some testimony connecting defendant with the plaintiff's act of paying the commissions, the conclusion is reached that such payment was not made by the plaintiff as defendant's agent; that defendant is not responsible therefor and that the paying of the moneys in defendant's possession, collected of the shipper, to the plaintiff for elevating the grain, in pursuance of a judgment of the court would not create any liability, civil or criminal, against it.

Verdict is directed in favor of plaintiff against defendant for $1,535.59, which will be entered by the clerk and an exception noted for the defendant.

Ordered accordingly.