### UNITED STATES v. SPENCER KELLOGG & SONS, Inc.

### SAME v. GREAT EASTERN ELEVATOR CORPORATION et al.

### SAME v. BUFFALO ELEVATING CO. et al.

(District Court, W. D. New York. May 7, 1926.)

Carriers ⬡⬡38—Grain elevators, receiving wheat from lake boats and transferring it to railroad cars as part of through shipment, violate Elkins Act (Comp. St. §§ 8597–8599) if they rebate to consignee part of elevating charge collected from carriers.

Grain elevators, receiving export wheat from lake vessels, and thereafter loading it into railroad cars as part of through shipment which receive compensation for such service from the carrier, violate Elkins Act (Comp. St. §§ 8597–8599), if they in turn rebate or refund to consignees a part of the elevating charge so collected, though there be no connivance or collusion between elevators and carriers; the act being applicable to "any person or corporation."

At Law. Spencer Kellogg & Sons, Inc., the Great Eastern Elevator Corporation and another, and the Buffalo Elevating Company and another were indicted for giving concessions, rebates, and discriminations to certain consignees of grain handled by them in violation of the Elkins Act. On demurrers to indictments. Demurrers overruled.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y. (E. B. Collins, Sp. Asst. U. S. Atty., and John J. Hickey, Interstate Commerce Commission Atty., both of Washington, D. C., of counsel), for the United States.

Lewis & Carroll, of Buffalo, N. Y. (William C. Carroll, of Buffalo, N. Y., of counsel), for Spencer Kellogg & Sons, Inc.

Locke, Babcock, Hollister & Brown, of Buffalo, N. Y., for Buffalo Elevating Co. and Western Elevating Association, Inc., and Great Eastern Elevator Corporation.

HAZEL, District Judge. General demurrers to the separate indictments—Nos. 6442 against Spencer Kellogg & Sons, Inc., 6443 against Great Eastern Elevator Corporation and Western Elevating Association, Inc., and 6444 against Buffalo Elevating Company and Western Elevating Associa-

tion, Inc.—have been argued together, and as substantially the same grounds for dismissal of the indictments are presented, a single opinion in their determination will suffice.

Defendants are separately engaged at Buffalo, N. Y., in operating grain elevators located at different points on Buffalo river, and in the course of their operations they receive export grain from lake vessels arriving at the port, and thereafter load such grain into railroad cars on the tracks of the Buffalo Creek Railroad, its tracks extending alongside the various elevators, and leased by defendants for switching onto other lines of the carriers for through transference to New York.

The indictment against Spencer Kellogg & Sons, Inc., in twelve counts, charges giving concessions, rebates, and discriminations to certain consignees of grain which resulted in a less rate of transportation than the through rate of 15.17 cents for each 100 pounds of exlake wheat in bulk as named in the tariff and schedule filed by the carrier. The indictments against Great Eastern Elevator Corporation and Western Elevating Association, Inc., and against Buffalo Elevating Company and Western Elevating Association, Inc., in five counts, respectively, also charge giving rebates, concessions, and discriminations from the established through rate. No offense is charged against the carriers—no connivance or collusion between defendants, or any of them, and any carrier. The transportation is specifically alleged to have been on a continuing arrangement between defendants and the common carriers, by which the former elevated the grain into railroad cars on sidings for through transportation to its destination at the established rate already mentioned; that defendants received from the carriers an elevating charge of 1 cent for each bushel of grain and gave the consignees rebates or refunds of one-half cent or one-fourth cent per bushel, respectively, which in effect constituted a less rate than the established rate.

It is mainly contended that defendants are not common carriers or agents of the railroads transporting the grain, or persons acting for them or on their account; that they acted in their own interests, as private concerns, parting with their money in giving refunds to the shippers or their agents, unconnected with any device, understanding, or arrangement, express or implied, with the railroad carriers, and accordingly that the Elkins Act (Comp. St. §§ 8597–8599) does not apply to them. But the Elkins Act, in my opinion, cannot be thus narrowly con-

strued. It was not essential that the rebate should have been paid out of the rate or funds of the carriers or specifically out of the elevation charge paid to defendants, or pursuant to a common understanding between them and the carriers. It makes no difference that defendants were not common carriers, or that they acted independently throughout in parting with their money to the shippers. The Elkins Act is not so impotent as to allow persons or corporations, aside from common carriers, to thwart its manifest purpose and legislative intendment by a device of any sort which results in a shipper paying a less rate for the carriage than the lawful rate. Its scope is broad and comprehensive. In terms, the act is not limited to common carriers, but includes "any person or corporation"; and it is declared to be unlawful for persons or corporations to grant or give a; rebate, concession, or discrimination in relation to the transportation of property by any common carrier subject to its provisions. Favoritism is forbidden by which, as a result of a device, a less rate than the established rate is paid for the transportation. The fundamental purpose of the law, as has often been said in other decisions, was to prevent unreasonable and unfair rates and to secure equality to shippers. It aims at preventing secret departures from the published tariff of rates, of giving preferences to favored shippers, and practicing all forms of discrimination, either by giving rebates or concessions or advantages of any kind. The statute is remedial. Armour Packing Co. v. U. S., 209 U. S. 56, 28 S. Ct. 428, 52 L. Ed. 681. Not only does the act in question include transportation of grain in interstate commerce by common carriers, but it also specially includes persons acting for a common carrier and elevating and transfer charges in transit, and generally the handling of the article transported—a duty which the common carrier agrees to perform upon request of the shipper. Nothing is embodied prohibiting the carrier from selecting the elevator to perform the elevation service. Indeed the transportation and elevation of the wheat and handling for effectuating the through shipment were acts of service to be done by the carrier and are included in the carriage. I. C. C. v. Diffenbaugh, 222 U. S. 42, 32 S. Ct. 22, 56 L. Ed. 83; Union Pac. R. Co. v. Updike Grain Co., 222 U. S. 215, 32 S. Ct. 39, 56 L. Ed. 171. The words of the statute (Comp. St. § 8597), "or other person acting for or employed by any common carrier, * * * shall in every case be also deemed to be the act, omission, or

failure of such carrier or shipper as well as that of the person," must be given effect. They are tantamount to a declaration that persons or corporations performing the elevator services are the agents of the carriers for the specific purpose. In U. S. v. Cleveland, C., C. & St. L. R. Co. (D. C.) 234 F. 178, which was an indictment against carriers and a third party acting as agent, Judge Geiger well said:

"The law, in its intention to reach, not only the particular corporation which sustains the relation of carrier to the shipper, but also its agents and persons acting for it, comprehends either individuals or corporate entities who contribute, knowingly and understandingly, to a refund or remission, 'in any manner or by any device,' and it is wholly immaterial that; in other respects, the latter may bear no relation to the carrier which may be the foundation of a legal relation of agency or employment of ascertainable scope."

Of course, if it can be shown on the trial that the defendants were not in fact acting for the carrier in elevating the grain, or employed by it, the principle just quoted does not apply to them. The interpretation of the statute, however, by Judge Geiger, finds support in the language of section 2 (Comp. St. § 8598), wherein it is said to be "lawful to include as parties, in addition to the carrier, all persons interested in or affected by the rate, regulation, or practice * * * and against such additional parties * * * to the same extent, and subject to the same provisions as are or shall be authorized by law with respect to carriers." See, also, Interstate Commerce Commission v. Reichmann (C. C.) 145 F. 235. If any rebate had been paid or concession given at the instance or with the knowledge of the carrier, the latter, no doubt, would be guilty of a violation. But failure to attribute knowledge to the carrier and join it in the indictment as a defendant, does not, in my opinion, confer the right to refund a part of the elevation charge to shippers by the elevating companies which received the grain on a through carriage and pursuant to an established rate of which they presumably had knowledge.

Importance is laid by defendants upon the case of Spencer Kellogg & Sons, Inc. v. D. L. & W. R. Co., 119 Misc. Rep. 174, 195 N. Y. S. 69; affirmed 204 App. Div. 243, 197 N. Y. S. 380. There plaintiff, Spencer Kellogg & Sons, Inc., defendant here, recovered an elevating charge which was resisted by the defendant railroad company on the ground that the plaintiff intended to refund to the

owner of the grain, or shipper, a part of the sum received by the carrier for the elevation charge, and that in paying, pursuant to the tariff, it would become liable for violation of the published rate. Inasmuch as that action was not on an indictment for violation of section 1 of the Elkins Act, it is difficult to perceive how, as defendants contend, their liability has been decided, even though reference was made by the learned court to the Elkins Act. The Appellate Division expressed the opinion that giving a rebate or commission by plaintiff to the owner or shipper, under the circumstances of that case, did not constitute a violation of section 2 of the Interstate Commerce Act (Comp. St. § 8564), on the part of the carrier for which it would be subject to criminal prosecution, since the money was not paid by it to the shipper. The Interstate Commerce Act (section 2) is narrower than section 1 of the Elkins Act, a later enactment. It apparently was directed solely against common carriers, prohibiting them from giving rebates or drawbacks. It was not aimed at prohibiting any person from giving rebates or concessions or discriminations, and did not specifically subject any other person thereto, and was simply limited to common carriers. In Hocking Valley R. Co. v. U. S., 210 F. 735, 127 C. C. A. 285, it was suggested by the court that section 2 of the Interstate Commerce Act could not be resorted to in a criminal prosecution for an offense such as described in the Elkins Act, which subsequently included resort to practices and devices which the Interstate Commerce Act did not cover. Chicago & A. Ry. Co. v. U. S., 156 F. 558, 84 C. C. A. 324, 26 L. R. A. (N. S.) 551; U. S. v. Vacuum Oil Co. (D. C.) 153 F. 598. See, also, House Report, Feb. 13, 1903, on Senate Bill 7053 (i. e., the Elkins Act).

All the points urged in argument to support the grounds of demurrer have been considered, including the assertion of a common-law right for elevators to compete with one another for obtaining the business in this port, but, in my opinion, the acts set forth in the indictment prima facie allege devices to evade the statute, and defendants, as operators of grain elevators, come within the inhibition of the Elkins Act. By their acts in giving rebates or concessions, the shippers or owners of grain specified in the indictment obtained transportation of the grain at a less rate than was paid by other shippers of grain, and at a rate less than the tariff of rates filed by the carriers.

Demurrers are overruled, and defendants must plead.